# Exhibit A

***EFILED***
Case Number 2021L 00087
Date: 7/26/2021 1:58 PM
Thomas McRa
Clerk of Circuit Cour
Third Judicial Circuit, Madison County Illinoi

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| APRIL SCHAEFFER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| AMAZON.COM, INC., and AMAZON.COM SERVICES, LLC, | ) ) ) |
| Defendants. | ) ) |

2021L 000876

No. 21-L-_____

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, April Schaeffer, on behalf of herself and all others similarly situated, for her

Class Action Complaint against Defendants Amazon.com, Inc., and Amazon.com Services, LLC

(collectively, "Amazon"), states as follows:

### PARTIES

1.      Plaintiff is an Illinois citizen residing in Madison County, Illinois.

2.      Amazon.com, Inc. is a Delaware corporation with its principal place of business

located in Washington.

3.      Amazon.com Services, LLC is a Delaware limited liability company with its

principal place of business located in Washington.[1]

---

[1] Amazon.com Inc. and Amazon.com Services LLC are collectively referred to herein as "Amazon."

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Amazon because Amazon purposefully directs their activities at residents of Illinois and the litigation results from injuries that arise out of or relate to those activities.

5.      Venue is proper in this district because Amazon is doing business in and, therefore, is a resident of, Madison County, Illinois, and because the transaction or some part thereof out of which the cause of action arose occurred in Madison County, Illinois.

## NATURE OF THE ACTION

6.      This claim involves Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), a law that regulates companies that collect, store, and use Illinois citizens' biometric data, such as fingerprints, scans of face geometry, and voiceprints, and information derived therefrom.

7.      Amazon is the world's leading e-commerce platform, with net sales of $280 billion in 2019. Of that $280 billion, $193 billion was from the United States alone.[2]

8.      According to James Marcus, an early employee of Amazon who became senior editor of Amazon.com: "It was made clear from the beginning that data collection was also one of Amazon's businesses. All customer behavior that flowed through the site was recorded and tracked. And that itself was a valuable commodity."[3]

9.      Amazon provides many services using its "Alexa" voice-based virtual assistant.

---

[2] Form 10-K, Amazon.com, Inc.,
https://www.sec.gov/ix?doc=/Archives/edgar/data/1018724/000101872420000004/amzn-20191231x10k.htm#s0EE73FEFBB6A5BD49E6C88DF6043F8A5
[3] PBS Frontline, *Amazon Empire: The Rise and Reign of Jeff Bezos* (hereafter "PBS Frontline"), transcript available at https://www.pbs.org/wgbh/frontline/film/amazon-empire/transcript/ (last visited June 24, 2021).

10.     Alexa is embedded in many devices, ranging from Amazon's own Echo "smart" speakers and Fire tablets, to many other "smart" items made by other companies. Currently, Alexa is integrated into and compatible with over 100,000 products, such as phones, TVs, thermostats, ovens, lights, locks, rings, light bulbs, headphones, and automobiles.[4]

11.     After a user speaks to an Alexa device, Amazon collects, captures, or otherwise obtains, and subsequently stores voiceprints of the user, and transcriptions of the voiceprints.

12.     These voiceprints and transcriptions constitute "biometric identifiers" and/or "biometric information" regulated by BIPA, and over the past five years, Amazon has violated BIPA, on numerous occasions, by, *inter alia*:

- not developing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

- selling, leasing, trading, or otherwise profiting from the biometric identifiers and/or biometric information of others in violation of 740 ILCS 14/15(c);

- disclosing, redisclosing, or otherwise disseminating the biometric identifier or biometric information of others without their consent and without satisfying the other requirements of 740 ILCS 14/15(d);

- not storing, transmitting, and/or protecting from disclosure all biometric identifiers and/or biometric information in its possession using the reasonable standard of care within the industry, in violation of 740 ILCS 14/15(e)(1); and/or

- not storing, transmitting, and/or protecting from disclosure all biometric identifiers and/or biometric information in its possession in a manner that is the same as or more protective than

---

[4] Cinnamon Janzer, et al., *Everything That Works With Amazon Echo and Alexa* (Updated May 8, 2019), https://www.reviewed.com/smarthome/features/everything-that-works-with-amazon-echo-alexa (last visited Feb. 28, 2020); *see also* PBS Frontline.

the manner in which Amazon stores, transmits, and protects other
confidential and sensitive information, in violation of 740 ILCS
14/15(e)(2).

13.     Although Plaintiff has not suffered a particularized harm from Amazon's conduct,

her statutory rights under BIPA have been violated, and she is "aggrieved" under the statute.

*Rosenbach v. Six Flags Entm't Corp*, 2019 IL 123186, ¶ 33 ("[W]hen a private entity fails to

comply with one of section 15's requirements, that violation constitutes an invasion, impairment,

or denial of the statutory rights of any person or customer whose biometric identifier or

biometric information is subject to the breach.  Consistent with the authority cited above, such a

person or customer would clearly be 'aggrieved' within the meaning of section 20 of the Act (*id.*

§ 20) and entitled to seek recovery under that provision.  No additional consequences need be

pleaded or proved.  The violation, in itself, is sufficient to support the individual's or customer's

statutory cause of action.").

14.     Accordingly, Plaintiff seeks to represent a class of similarly situated individuals to

obtain an Order: (A) awarding Plaintiff and each Class Member statutory damages of $5,000 for

each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the

alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

ILCS 14.20(1); (B) enjoining Amazon from collecting, obtaining, storing, using, selling, leasing,

trading, profiting from, disclosing, redisclosing, or otherwise disseminating Plaintiff's and the

Class Members' biometric identifiers and biometric information until done so in compliance with

BIPA; (C) awarding Plaintiff and the Class Members reasonable attorneys' fees, costs, and other

expenses pursuant to 740 ILCS 14/20(3); (D) awarding Plaintiff and the Class Members pre-and

post-judgment interest, as provided by law; and (E) awarding such other and further relief as is

just and appropriate.

**Illinois' Biometric Information Privacy Act**

15.     The Illinois General Assembly enacted the Biometric Information Privacy Act,

740 ILCS 14/*et seq*. ("BIPA") in 2008 to establish standards of conduct for private entities that

collect or possess biometric identifiers and biometric information.

16.     The Illinois General Assembly noted that BIPA was carefully crafted to protect

biometric data because "unlike other unique identifiers that are used to access finances or other

sensitive information," one's own biometric information cannot be changed; "[t]herefore, once

compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely

to withdraw from biometric-facilitated transactions."  740 ILCS 14/5.

17.     "Biometric identifiers" covered by BIPA include retina or iris scans, fingerprints,

voiceprints, and scans of human or face geometry, none of which can be changed if

compromised.  740 ILCS 14/10.

18.     "Biometric information" covered by BIPA includes "any information, regardless

of how it is captured, converted, stored, or shared, based on an individual's biometric identifier

used to identify an individual." *Id*.

19.     BIPA requires that any "private entity in possession of biometric identifiers or

biometric information must develop a written policy, made available to the public, establishing a

retention schedule and guidelines for permanently destroying biometric identifiers and biometric

information when the initial purpose for collecting or obtaining such identifiers or information

has been satisfied or within 3 years of the individual's last interaction with the private entity,

whichever occurs first."  740 ILCS 14/15(a).

20.     BIPA also provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

21.     BIPA further makes it unlawful for any private entity in possession of a biometric identifier to "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier . . . ; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction." 740 ILCS 14/15(d).

22.     Finally, BIPA provides that "[a] private entity in possession of a biometric identifier or biometric information shall: (1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(e).

23.     BIPA provides for a private right of action: "Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20. *See also Rosenbach v. Six Flags Entm't Corp*, 2019 IL 123186, ¶ 33.

24.     Under BIPA, "[a] prevailing party may recover ***for each violation***: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.* (emphasis added).

## How Alexa Works

25.     Alexa devices are designed to record and respond to oral communications upon hearing a "wake word" (usually "Alexa").

26.     If the "wake word" is not spoken, Amazon claims that Alexa-enabled devices will not capture a user's conversations.[5]

27.     Despite Amazon's claim that Alexa only captures conversations after hearing the "wake word," reports and studies have indicated that Alexa-enabled devices frequently capture conversations by accident without being triggered by the "wake word."[6]

---

[5] Alexa and Alexa Device FAQ's,
https://www.amazon.com/gp/help/customer/display.html?linkCode=w61&imprToken=28-fLyu75f7XPVZKlgVB7w&slotNum=0&nodeId=201602230

[6] *See, e.g.,* Tom Warren, *Amazon explains how Alexa recorded a private conversation and sent it to another user,* (May 24, 2018), https://www.theverge.com/2018/5/24/17391898/amazon-alexa-private-conversation-recording-explanation (last visited Feb. 28, 2020); Sara Morrison, *Alexa records you more often than you think,* (Feb. 21, 2020),
https://www.vox.com/recode/2020/2/21/21032140/alexa-amazon-google-home-siri-apple-microsoft-cortana-recording; (last visited Feb. 28, 2020); Matt Day, et al., *Is Anyone Listening to You on Alexa? A Global Team Reviews,* (Apr. 10, 2019),
https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited Feb. 28, 2020).

28.     One group of researchers discovered more than 1,000 sequences of words that incorrectly trigger smart speakers, such as Alexa.  For example, Alexa may inadvertently be activated by the words "unacceptable" or "election."[7]

29.     Amazon's "wake word" technology works by identifying acoustic patterns that match the wake word.

30.     Once the Alexa device recognizes the acoustical pattern of the wake work, the device captures a voiceprint of the speaker's oral communication that follows the wake word and transmits the voiceprint to Amazon to undergo a series of steps to process a response using Amazon's Alexa Voice Service.

31.     The Alexa Voice Service utilizes Automatic Speech Recognition technology (ASR), whereby computers detect patterns in audio waveforms of the voiceprint, match them with the sounds in a given language, and ultimately identify the words spoken.[8]  This is the first step required for Alexa to respond to a request.

32.     The ASR technology analyzes various features of the user's voiceprint, such as the micro pauses the speaker takes between words, the frequency, and the speaker's pitch, in order to convert the voiceprint into a transcribed text string.[9]

---

[7] *See* https://arxiv.org/pdf/2008.00508.pdf, n.1.

[8] *What is Automatic Speech Recognition (ASR)*, https://developer.amazon.com/en-US/alexa/alexa-skills-kit/asr (last visited Feb. 19, 2020).

[9] *See* Joseph Frankel, *How Does My Voice Assistant Know What I'm Saying?*, (Apr. 20, 2018), https://nymag.com/intelligencer/smarthome/make-me-smarter-voice-speech-recognition-alexa-siri-cortana-google.html (last visited Feb. 28, 2020); Josh Hendrickson, *Alexa, Siri, and Google Don't Understand a Word You Say*, (Feb. 19, 2019) https://www.howtogeek.com/405011/voice-assistants-dont-really-understand-you/ (last visited Feb. 28, 2020); Alexandre Gonfalonieri, *How Amazon Alexa works? Your guide to Natural Language Processing (AI)*, (Nov. 21, 2018), https://towardsdatascience.com/how-amazon-alexa-works-your-guide-to-natural-language-processing-ai-7506004709d3 (last visited Feb. 28, 2020).

33.     After the ASR analyzes and transcribes the voiceprint, the Alexa Voice Service interprets the text using Natural Language Understanding (NLU), a process that allows Alexa to deduce what a speaker intends, rather than just the words they say.[10]

34.     According to Amazon, NLU works by using prior users' input: "With NLU, Alexa-enabled devices like Amazon Echo can apply learnings from historical interactions, across thousands of diverse applications, to understand that 'is it raining outside' and 'is it going to rain' are essentially the same question."[11]

35.     After the NLU has determined what the user wants, the Alexa Voice Service compares the transcribed communication to expected commands and, if it finds a match, it follows a set of instructions to retrieve the appropriate information from a designated data source to provide a response to the user in the form of a simple speech markup language (SSML) which informs Alexa how to respond.

36.     If the NLU does not find a match, it looks for an alternative of what to do based on what information it has.

37.     Alexa's response system then takes the SSML that was produced, uses a text-to-speech (TTS) system to generate an audio speech file, and streams the audio to the user's device.

38.     Generally, Alexa's response ends the interaction, though in some circumstances, Alexa may ask follow-up questions to the user that require answers in order for Alexa to provide a complete response to the user's inquiry. If a follow-up answer is provided, the Alexa device captures the speaker's voiceprint and the Alexa Voice Service repeats the steps described above.

---

[10] *What is Natural Language Understanding (NLU)?*, https://developer.amazon.com/en-US/alexa/alexa-skills-kit/nlu (last visited Feb. 28, 2020).
[11] *Id.*

39.     The speech capture, Alexa Voice Service, and response process is represented

below:



40.     In addition to analyzing the voiceprint for words, a key component of Alexa

technology is the ability to identify speakers by voice.  A job posting for the "Alexa speech"

team explains: "Alexa Speech is responsible for speech and acoustic event technology for Alexa.

. . . Some of the systems we work on include those that . . . identify speakers by voice . . . ."[12]

41.     In October 2020, Shehzad Mevawalla, the director of automatic speech

recognition for Alexa, explained in a blog on Amazon's website, that "Alexa's speaker ID

function—*which recognizes which customer is speaking*, so that Alexa can personalize

responses—has also moved to an end-to end model" and, further, these changes have "given us

an order of magnitude improvement in speaker identification systems."[13]

---

[12] https://www.amazon.jobs/en/teams/alexa-speech
[13] https://www.amazon.science/blog/alexas-new-speech-recognition-abilities-showcased-at-interspeech

42.     Likewise, a YouTube video[14] by Ariya Rastrow, a Senior Principal with Alexa Speech, included the following slide (copyrighted by Amazon) that lists "speaker identification" as a component that occurs on the "cloud side" of an Alexa interaction:



**Amazon's Collection, Use, Storage, and Disclosure of Users' Biometric Data**

43.     After Alexa has responded to a user's request, Amazon does not delete the voiceprint or the transcription created by that request.

44.     Instead, Amazon captures, collects, and indefinitely retains the voiceprint on its servers for continued use and analysis, in order to, *inter alia*, improve its speech and voice recognition capabilities.

45.     For years, Amazon represented that the voiceprints were simply streamed to the cloud and used only to allow Alexa to respond to the command and help personalize Alexa's response to a user.

---

[14] https://www.youtube.com/watch?v=8drK6Oyv1a0

46.     Amazon has more recently, however, indicated that it stores voiceprints, the transcriptions made from the voiceprints, and other information created from the voiceprints, including "acoustic models" of the speaker's voice characteristics, on multiple servers.

47.     Moreover, Amazon captures, collects, and indefinitely retains the voiceprints of users when Alexa activates by mistakenly "hearing" the wake word.

48.     All voiceprints from the Amazon customer are associated with the customer's Amazon account.

49.     Amazon collects, obtains, and stores the voiceprint and transcription created therefrom to improve Alexa via a process known as "machine learning."

50.     Machine learning only works when the artificial intelligence system underlying it is supported with data, from which the system can learn and develop.

51.     In Amazon's case, Alexa's machine learning is bolstered by what likely amounts to hundreds of millions, if not billions, of voiceprints that Amazon has stored on its servers, which it uses to constantly refine the natural language understanding that is critical to Alexa's function.

52.     In addition, according to an article by Bloomberg, Amazon.com Inc. employs thousands of people around the world, both full-time Amazon employees and third-party contractors, who listen to voice recordings, have access to voiceprints, and review the transcriptions captured by Amazon's Echo device.[15]

---

[15] Matt Day, et al., *Is Anyone Listening to You on Alexa? A Global Team Reviews*, (Apr. 10, 2019), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited Feb. 28, 2020).

53.     These Amazon workers transcribe and annotate the aforementioned data as part of an effort to eliminate gaps in Alexa's understanding of human speech and to help it better respond to commands.[16]

54.     The teams also use internal chat rooms to share audio files "when they need help parsing a muddled word—or come across an amusing recording."[17]

55.     Because of Amazon's collection of voiceprints and transcripts thereof, Amazon has been able to significantly improve all of its voice-based products and services to the point that, in August 2019, Amazon reported that Alexa answered queries accurately 80% of the time, up 19 percentage points from 61% in July 2018.[18]

56.     Once Amazon is in possession of the voiceprint, Amazon employees may access it, and identify the location of the device where it was obtained and other data collected by the Alexa device.

57.     Upon information and belief, the voiceprint is also aggregated with data from other Amazon sources, such as the user's shopping history, order history, or reminders to create profiles of information for Amazon to utilize for its own business purposes.

58.     Amazon does not delete the voiceprints after they have been used to provide a response. Instead, Amazon stores the voiceprints, which are then reviewed by Amazon's artificial intelligence and human employees for Amazon's business purposes.

---

[16] *Id.*

[17] *Id.*

[18] Rayna Hollander, *Amazon is improving the accuracy of Alexa's natural language understanding*, (Oct. 11, 2019), https://www.businessinsider.com/amazon-bolsters-alexa-skill-voice-accuracy-2019-10 (last visited June 9, 2021).

59.     Amazon does not allow a user to stop it from collecting voiceprints. The only way to stop Amazon's collection of voiceprints is to mute the microphone or deactivate the device, both of which defeat the device's utility.

60.     In or around 2019, Amazon began providing users the ability to delete voice recordings; however, while Amazon's current policies tell customers that they may delete voice recordings, Amazon is unclear as to whether this deletes all of the voiceprints Amazon has collected and the transcriptions, acoustic models, or other information made from those voiceprints.[19]

61.     For instance, Amazon states that even if a customer deletes an audio recording, Amazon, or third-party developers may retain "records of the interaction. For example, for many types of Alexa requests – such as when a customer subscribes to Amazon Music Unlimited, places an Amazon Fresh order, requests a car from Uber or Lyft, orders a pizza from Dominos, or makes an in-skill purchase of premium digital content – Amazon and/or the applicable skill developer obviously need to keep a record of the transaction."[20]

62.     Moreover, as stated by Theresa Payton, a former White House chief information officer and founder of cybersecurity company Fortalice: "'Delete' is never really 'delete.'" "Delete just means that you can't see it anymore."[21]

63.     Amazon does not, and/or within the Class Period failed to, disclose the following to its users:

---

[19] *See* Letter from Amazon to Senator Christopher A. Coons; https://www.coons.senate.gov/imo/media/doc/Amazon%20Senator%20Coons_Response%20Letter_6.28.19[3].pdf.

[20] *Id.*

[21] https://www.cnet.com/home/smart-home/amazon-alexa-transcripts-live-on-even-after-you-delete-voice-records/ (last visited June 3, 2021).

A.    that Amazon creates, analyzes, and utilizes a user's voiceprint and that the same is stored on Amazon's servers indefinitely;

B.    that Amazon creates, analyzes, stores, and utilizes a transcription of a user's request, derived from the aforementioned voiceprint, and stores the same on Amazon's servers indefinitely;

C.    that human employees and third-party contractors have access to and utilize users' voiceprints and the transcriptions created therefrom, or the extent of such access and use;

D.    that Amazon uses the voiceprints to create acoustic models of the voice characteristics of every person who speaks to Alexa;

E.    the retention schedule associated with a user's voiceprint and the transcription, acoustic model, and other information created from the voiceprint; and

F.    proper guidelines for permanently destroying all voiceprints and the transcriptions, acoustic models, and other information created from the voiceprint, from all of Amazon's servers.

64.    David Limp, the Senior Vice President of Devices and Services at Amazon.com acknowledged Amazon's inadequate disclosures, and Robert Frederick, former Senior Manager and Amazon Web Services acknowledged that he actually turns off his Alexa devices to prevent private conversations from being shared:

NARRATOR:

Once the device is awake and the blue light is on, it's recording. And last year, it was revealed that Amazon employs thousands of people around the world to listen and transcribe some of those recordings to help train the system.

JAMES JACOBY [Correspondent]:

Do you think that you did a good enough job of disclosing that to consumers? That there are humans involved in listening to these recordings?

DAVE LIMP [Amazon Senior Vice President, Devices & Services]:

We try to articulate what we're doing with our products as clearly as we can. But if I could go back in time and I could be more clear and the team could be more clear on how we were using human beings to annotate a small percentage of the data, I would, for sure. What I would say, though, is that once we realize that customers didn't clearly understand this, within a couple of days we added an opt-out feature so that customers could turn off annotation if they so chose. And then within a month or two later we allowed people to auto-delete data, which they also asked for within that time frame.

We're not going to always be perfect, but when we make mistakes, I think the key is that we correct them very quickly on behalf of customers.

NARRATOR:

But even one of the founders of Amazon Web Services approaches his Alexa devices with caution.

JAMES JACOBY:

When do you turn off your Alexa?

ROBERT FREDERICK, Former senior manager, Amazon Web Services:

I turn off my Alexa when I know for a fact that the conversation that I am going to have or whenever I just want to have a private moment. I don't want certain conversations to be heard by humans, conversations that I know for a fact are not things that should be shared, then I actually turn off those particular listening devices.[22]

---

[22] PBS Frontline.

## Plaintiff's Experience

65.     Plaintiff owns two Amazon Echo devices equipped with Alexa services.

66.     On numerous occasions during the Class Period, Plaintiff, an Illinois citizen,

spoke to her Alexa devices located in her home in Illinois.

67.     After Plaintiff spoke into the Alexa devices, Amazon came into possession of

Plaintiff's voiceprint and transcriptions, acoustic models of her voice characteristics and other

information created from the voiceprint.

68.     On certain occasions, Plaintiff's Alexa device would also light up or speak when

Plaintiff spoke words other than the "wake-word."

69.     The voiceprints of Plaintiff and the transcripts, acoustic models of her voice

characteristics, and other information in Amazon's possession based on the voiceprints that links

the voiceprints to Plaintiff are "biometric identifiers" and/or "biometric information" pursuant to

740 ILCS 14/10.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this class action on behalf of herself and all others similarly

situated, as representative of the following class (the "Class"):

> All Illinois residents who (a) own an Alexa device located in Illinois from
> which, during the Class Period, Amazon has taken possession of (i) the
> person's voiceprint and/or (ii) a voiceprint transcript, acoustic model of
> voice characteristics, or other information created from a voiceprint that is
> linked to the person; and (b) who have suffered no injury from Amazon's
> violations of BIPA § 15(a), (c), (d), and/or (e) other than statutory
> aggrievement.

71.     Excluded from the Class are any Defendants, its parents, subsidiaries, affiliates,

predecessors, successors, officers, directors, and the immediate family members of such persons.

Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

72.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclassses after having had an opportunity to conduct discovery.

73.     The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

74.     The Class is certifiable under 735 ILCS 5/2-801.

75.     **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. The determination of the numerosity factor can be made from Defendants' records.

76.     **Typicality.** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have had their rights under BIPA violated based on Amazon's failure to comply with the provisions of BIPA.

77.     **Commonality and Predominance**. There are questions of law and fact common to the Class, which predominate over any questions affecting individual members of the Class. These common questions of law and fact include, without limitation:

> a.     Whether Amazon is in possession of biometric identifiers or biometric information of Plaintiff and the Class;
>
> b.     Whether Amazon developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first;
>
> c.     Whether Amazon sold, leased, traded, or otherwise profited from the biometric identifier or biometric information in its possession;

d.  Whether Amazon disclosed, redisclosed, or otherwise disseminated the biometric identifier or biometric information in its possession without receiving consent or satisfying the other requirements of 740 ILCS 14/15(d);

e.  Whether Amazon stored, transmitted, and protected from disclosure all biometric identifiers and biometric information in its possession using the reasonable standard of care within the industry;

f.  Whether Amazon stored, transmitted, and protected from disclosure all biometric identifiers and biometric information in its possession in a manner that is the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information; and/or

g.  Whether any violations of BIPA by Amazon were reckless, intentional, or negligent.

78.    **Adequacy**. Plaintiff is a member of the Class she seeks to represent, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adeuately protect the interests of the Class.

79.    **Appropriateness.** A class action is an appropraite method for the fair and efficient adjudication of this controversy and is superior to all other available methods. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to be aggrieved and Defendants' misconduct will proceed without remedy. Even if Class members could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a

class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

80.    **Class Action on Limited Issues.**  Because there are common individual issues among the Class, it is appropraite for this action to be maintained as a class action with respect to particular issues, if necessary, pursuant to 735 ILCS 5/2-802(b).

## COUNT I
### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(a)

81.    Plaintiff incorporates by reference each and every allegation set forth above.

82.    Amazon qualifies as a "private entity" under BIPA. 740 ILCS 14/10.

83.    As set forth herein, Amazon is in possession of biometric identifiers and/or biometric information.

84.    For some or all of the Class Period, Amazon did not develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information to occur by the earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a).

85.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

86.     Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's

violation of their rights under BIPA, and accordingly are entitled to seek statutory damages and

relief provided for under BIPA. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 40.

87.     Neither Plaintiff nor the Class members suffered any injury as a result of the

violations of BIPA § 15(a) other than the statutory aggrievement referenced above.

88.     Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per

intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of

$1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys'

fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for

Relief set forth below.

## COUNT II
## Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(c)

89.     Plaintiff incorporates by reference each and every allegation set forth above.

90.     As set forth above, for some or all of the Class Period, Amazon used the

biometric identifiers and/or biometric information in its possession to improve Alexa's natural

language understanding and for its own commercial purposes.

91.     Amazon's use of the biometric identifiers and biometric information in its

possession to improve Alexa's natural language understanding, expand the scope of Alexa

products, and create other business opportunities for Amazon has benefited Amazon through

increased sales of its improved voice-recognition products.

92.     For instance, Amazon has utilized the biometric identifiers and/or biometric data

to make Alexa compatible with over 100,000 products. Without the identified biometric data,

there would be fewer, and worse-functioning Alexa products for Amazon to profit from.

93.     Moreover, Amazon has profited from linking the voiceprints in their possession to its user's accounts and other activities involving Amazon.

94.     As Shoshanna Zuboff, author of "The Age of Surveillance Capitalism" puts it: "[Amazon] is going to know more about you than anyone knows. They're trying to move as intimately as possible and as quietly as possible into everyday life.  Amazon wants to have the entire environment essentially miked.  They want your walk in the park, they want your run down the city street.  They want what you do in your car, they [want] what you do in your home. All these intimacies, all this insight is being integrated—analyzed and integrated.  That is an extraordinary kind of power that has never existed before."[23]

95.     Furthermore, Amazon has used the biometric identifiers and biometric information in its possession to create technology that is so intertwined with the biometric data that marketing the Alexa technology is essentially disseminating biometric data for profit.

96.     Additionally, Amazon has used the biometric identifiers and biometric information in its possession to obtain a competitive advantage over other businesses offering similar devices that provide similar voice-based services as Amazon.

97.     Accordingly, Amazon violated 740 ILCS 14/15(c) by selling, leasing, trading, or otherwise profiting biometric identifiers and/or biometric information in its possession.

98.     In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

99.     Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek statutory damages and relief provided for under BIPA. *See Rosenbach*, 2019 IL 123186, ¶ 40.

---

[23] PBS Frontline.

100.    Neither Plaintiff nor the Class members suffered any injury as a result of the violations of BIPA § 15(c) other than the statutory aggrievement referenced above.

101.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT III
## Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(d)

102.    Plaintiff incorporates by reference each and every allegation set forth above.

103.    As set forth above, Amazon employs thousands of individuals around the world, including both full-time Amazon employees and third-party contractors, who have access to and listen to voiceprints, and information created therefrom, and review the transcriptions captured by Amazon's devices.

104.    Thus, for some or all of the Class Period, Amazon disclosed, redisclosed, or otherwise disseminated biometric identifiers and/or biometric information in its possession to third parties.

105.    Amazon violated 740 ILCS 14/15(d) because Amazon disclosed, redisclosed, or disseminated its customers' biometric identifiers and/or biometric information in its possession without receiving their consent. Nor did such disclosure, redisclosure, or dissemination complete a financial transaction authorized by the subject. Nor was the disclosure, redisclosure, or dissemination required by law or pursuant to a valid warrant or subpoena.

106.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

107.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek statutory damages and relief provided for under BIPA. *See Rosenbach*, 2019 IL 123186, ¶ 40.

108.    Neither Plaintiff nor the Class members suffered any injury as a result of the violations of BIPA § 15(d) other than the statutory aggrievement referenced above.

109.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT IV
## Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(e)

110.    Plaintiff incorporates by reference each and every allegation set forth above.

111.    For some or all of the Class Period, Amazon has failed to store, transmit, and protect from disclosure the biometric identifiers and/or biometric information in its possession using the reasonable standard of care within the industry, in violation of 740 ILCS 14/15(e)(1).

112.    Additionally, for some or all of the Class Period, Amazon has failed to store, transmit, and protect from disclosure the biometric identifiers and/or biometric information in its possession in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

113.    For example, as set forth above, Amazon permits its employees and third-party contractors to disseminate biometric data simply because they find it "amusing."

114.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

115.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek statutory damages and relief provided for under BIPA. *See Rosenbach*, 2019 IL 123186, ¶ 40.

116.    Neither Plaintiff nor the Class members suffered any injury as a result of the violations of BIPA § 15(e) other than the statutory aggrievement referenced above.

117.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for judgment against Defendants as follows:

A.    entering an order certifying the Class as requested herein and appointing the undersigned as lead counsel for the Class;

B.    awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative,

statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

C.      enjoining Amazon from collecting, obtaining, storing, using, selling, leasing, trading, profiting from, disclosing, redisclosing, or otherwise disseminating Claimant's biometric identifiers until done so in compliance with BIPA;

D.      awarding Plaintiff her reasonable attorneys' fees, costs, and other expenses pursuant to 740 ILCS 14/20(3);

E.      awarding Plaintiff pre-judgment and post-judgment interest, as provided by law; and

F.      awarding such other and further relief as is just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

**GOLDENBERG HELLER**
**& ANTOGNOLI, P.C.**

*/s/ Kevin P. Green*
Thomas P. Rosenfeld, #6301406
Kevin P. Green, #6299905
2227 South State Route 157
Edwardsville, IL 62025
(618) 656-5150
tom@ghalaw.com
kevin@ghalaw.com

***Attorneys for Plaintiff***